IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DANIEL O'CONNELL,<br><br>Plaintiff,<br><br>vs.<br><br>WAILEA HIGHLANDS COMMUNITY ASSOCIATION, *et al.*,<br><br>Defendants. | Case No. 25-cv-00255-DKW-WRP<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

On June 23, 2025, Plaintiff Daniel O'Connell filed a Complaint against Defendants Wailea Highlands Community Association, Inc. (the "HOA"), Barbara Lord, Laurel Miranda, Lisa Johnson, Melissa Rippey, and Robynne Daly (the "Individual Defendants"), in which he alleged that Defendants had improperly enacted new regulations for the neighborhood in which he lived that would require him to remove palms trees on his property. Dkt. No. 1. O'Connell now moves for a preliminary injunction to prevent Defendants from enforcing the new regulations.[1] Dkt. Nos. 30-31.

[1]O'Connell later filed a second document, also styled as a motion for preliminary injunction. Dkt. No. 36. The first page of this filing, however, is identical to O'Connell's first motion, down even to the purported date of signing. *Id.* at 3. It also does not contain a memorandum of law and instead seems to consist only of a string of exhibits in support of O'Connell's first motion. *See generally* Dkt. No. 36-1–36-61. Accordingly, the Court treats this second filing as supplementing O'Connell's motion for preliminary injunction. To the extent that O'Connell intended the second filing to be a separate motion, the motion is DENIED as incomplete.

Having reviewed the pleadings, the parties' briefs, and the relevant legal authorities, the Court finds that a preliminary injunction is not warranted. Accordingly, the motion is DENIED.

## BACKGROUND

### I. The Complaint

The following facts are taken from the allegations of the Complaint and its attached exhibits. Dkt. No. 1.

In 2020, O'Connell purchased 4280 Melianani Place, Wailea HI 96753 (the "Property"), a lot within the Wailea Highlands subdivision. *Id.* ¶ 13. Property owners within Wailea Highlands, including O'Connell, are members of the HOA. *Id.* ¶ 14. The HOA manages Wailea Highlands through governing documents, including its Declaration of Covenants, Conditions, Restrictions and Easements (the "Declaration"). *Id.*; *see also* Dkt No. 1-2. The HOA is governed by a Board of Directors (the "Board") which, per the Declaration, has the power "to adopt, amend and enforce reasonable rules and regulations" for the "reasonable and orderly use of roads and other Common Areas and facilities" and the "clarification, implementation and enforcement of the covenants and restrictions" in the Declaration. Dkt. No. 1-2 at 6. As relevant here, the Declaration further states the following with respect to plants within Wailea Highlands:

> 3.04 Trees. All trees on a Lot will be kept trimmed by the Owner of the Lot to a height not exceeding the height of the roof line of the tallest

> building on the Lot. This restriction shall not, however, apply to palm trees which grow with a single trunk, such as a coconut or royal palm.

*Id*. at 4.

In November 2022, Lord, the owner of a lot neighboring the Property, asked O'Connell to trim several Areca palm trees on the Property, which blocked her ocean view. Dkt. No. 1 ¶¶ 24–28. O'Connell refused because the Areca palms could not be trimmed without harming the trees, the trees provided a privacy barrier between the Property and adjoining lots, and he did not believe the Areca palms blocked Lord's "general ocean views." *Id*. ¶¶ 28–30. O'Connell instead removed several other non-Areca palms from the Property to improve Lord's view. *Id*. ¶ 31.

In June 2023, the HOA served O'Connell with a Notice of Violation ("NOV") demanding that he trim the Areca palms, stating that the trees had grown over the "roof ridge line height" of the Property and caused "view plane obstructions." *Id*. ¶ 32. O'Connell asserts that this NOV "selectively targeted" him because "numerous other lots" in Wailea Highlands had plants that grew beyond the roof ridge line height but were not disciplined by the HOA. *Id*. ¶ 38.[2] O'Connell refused to comply and appealed the NOV. *Id*. ¶ 40.

The NOV did not state that O'Connell had violated the Declaration, but rather that the height of the Areca palms contravened the Wailea Highlands "Landscaping

[2]Elsewhere, however, O'Connell alleges that the HOA served "a similar NOV on another lower-level property" to "mask its selective targeting." Dkt. No. 1 ¶ 37.

Standards." *Id.* ¶¶ 34–35, 47. Although the Board adopted these Landscaping Standards in 2016 before O'Connell's purchase of the Property, O'Connell asserts that the Board had no right to do so, as the Standards went beyond the Declaration's regulations on trees, and the Board did not seek lot owners' approval to amend the Declaration. *Id.* ¶¶ 47–49.

In February 2025, the Board unanimously approved an amendment (the "Amendment") to the Declaration which explicitly forbade "trees, landscaping or any vegetation, including but not limited to Areca Palms" to "exceed the height of the roof ridge line." *Id.* ¶¶ 65–69. O'Connell objected that three members of the Board owned upper-level lots in Wailea Highlands and thus had "a clear conflict-of-interest" in approving the Amendment, which "disproportionately impact[ed] lower level lot owners" like O'Connell. *Id.* ¶¶ 76–83. The Board did not respond to O'Connell's objections and submitted the Amendment via ballot to the lot owners of Wailea Highlands. The lot owners, in turn, voted to adopt the Amendment by the requisite required.[3] *Id.* ¶¶ 91–95.

## II. Procedural History

On June 23, 2025, O'Connell filed the Complaint, asserting claims of breach of fiduciary duty, interference with contractual relations, and fraudulent inducement.

[3]Although not stated in the Complaint, the record shows that the Amendment was passed by the lot owners, with 70.83% in favor. Dkt. No. 48 at 7.

Dkt. No. 1 ¶¶ 103–138. On January 20, 2026, O'Connell moved for a preliminary injunction that would enjoin the HOA from enforcing the Amendment or the Landscaping Standards against him. Dkt. No. 31. O'Connell argues that he is likely to succeed because the HOA failed to provide open meetings concerning the Amendment or account for Board members with conflicts of interest, in violation of Hawaiʻi law. *Id.* at 13–15. In particular, one of the Board members who attended the meeting at which the HOA approved the Amendment and the mailing of the ballot owned an upper-level lot, and—although she recused herself from the vote—her presence established the necessary quorum. *Id.* O'Connell additionally claims the Board failed to disclose this conflict of interest in the ballots mailed to lot owners. *Id.* Further, according to O'Connell, the Amendment constitutes a breach of O'Connell's contract with the HOA and cannot be enforced retrospectively to require removal of O'Connell's Areca palms. *Id.* at 15–19. O'Connell would suffer irreparable harm unless the Amendment was enjoined, as he will be "stripped of the seclusion he has enjoyed" on his lot should the palms be removed. *Id.* ¶ 19. The resulting loss in privacy is such that the balance of equities favors O'Connell, as does the public's interest in ensuring that community associations "are transparent while honoring their member's reasonable contractual expectations." *Id.* at 19–20.

On July 24, 2026, the HOA filed its opposition, arguing that there is no likelihood of irreparable harm because the HOA does not intend to even attempt the

trimming or removal of the Areca palms "until *after* this Court rules against [O'Connell] at trial." Dkt. No. 48 at 1–3, 8–9; *see also* Dkt. No. 48-1 ¶ 10 ("Until the legal matter is resolved the [HOA] has no plans to consider self help [sic] options" to trim or remove the palms). Instead, in the interim, the HOA plans to merely fine O'Connell for failure to comply with the Amendment, fines which could be reversed or erased should O'Connell prevail. *Id.* at 1–3, 8–9. Additionally, per Defendant HOA, O'Connell is not likely to succeed on the merits because the Amendment was adopted after a proper and open deliberation process, and the public interest and the balance of equities favor the HOA being permitted to amend its own governing documents without interference. *Id.* at 14–25.

On the same day, the Individual Defendants filed their opposition, in which they substantively join the HOA's arguments for denying the motion. Dkt. No. 49.

On July 31, 2026, O'Connell replied, substantially repeating the arguments in his motion and further asserting that he would face irreparable harm from the loss of his Areca palms and his "unique, mature privacy screen." Dkt. No. 53 at 2. The HOA contention that they would not attempt to remove or trim the palms "carries no weight, because the [HOA] has no self-help power to withhold." *Id.* at 3.

## STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The principal purpose of preliminary injunctive relief is to preserve the status quo pending a determination on the merits. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009). Injunctive relief "is an extraordinary remedy, never awarded as of right." *Winter*, 555 U.S. at 24.

The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). "Speculative injury does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). A presently existing actual threat must be shown, although the injury need not be certain to occur. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130–31 (1969).

## DISCUSSION

O'Connell seeks to enjoin enforcement of the Amendment, which he believes will force the trimming or removal of his Areca palms. Dkt. No. 31. Defendants respond that, among other reasons, the injunction should be denied because there is no risk of imminent injury. Dkt. Nos. 48 & 49. The Court agrees with Defendants.

Defendants state that O'Connell's ongoing failure to comply with Association rules, including the Amendment, subjects him to fines of $100 "per day that he is

out of compliance." Declaration of Association President Robynne Daly, Dkt. No. 48-1 ¶ 6. The HOA has begun to assess these fines through billing on O'Connell's Association account. Defendants argue, and the Court agrees, however, that monetary losses alone do not rise to the level of an irreparable injury. Such losses could simply be reversed or refunded at a later stage in litigation, assuming they had ever been collected in the first place, and are thus eminently reparable. *See* Dkt. No. 48-1 at ¶¶ 6-9; *Goldie's Bookstore, Inc. v. Superior Ct.*, 739 F.2d 466, 471 (9th Cir. 1984) ("Mere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."); *Aenlle v. Cnty. of San Mateo*, No. 25-CV-07936 (JD), 2025 WL 2856302, at *2 (N.D. Cal. Oct. 8, 2025) ("[T]he wrongful levying and collection of a fine may be remedied by an order of a refund, which forecloses equitable relief.").

O'Connell does not dispute that mere fines do not constitute irreparable harm. Instead, he argues that the true harm at stake is the loss of privacy he would suffer should the palms be removed. Dkt. No. 53 at 2. The palms, however, have not been removed, nor is there any evident risk of removal. Defendants have made clear in their briefing and in sworn statements that they have no intention to attempt to remove the palms "until *after* this Court rules against [O'Connell] at trial," Dkt. No. 48 at 1–3, 8–9, and that the HOA has no plans to undergo self-help options at this time. Dkt. No. 48-1 ¶ 10.

O'Connell's only reply is that Defendants' representations "carr[y] no weight, because the [HOA] has no self-help power to withhold." Dkt. No. 53 at 3. There are two problems with this response. First, O'Connell offers no explanation or support for his belief that the HOA lacks the "self-help power" to remove the palms. His only supportive reference, *see id*. at 3, is to a declaration he previously filed, *see* Dkt. No. 45-1, which does not mention the HOA's power to remove the palms or take any other self-help action. The second problem is more significant than the first: if it is true that the HOA lacks the self-help power to remove his palms, O'Connell should have no reasonable fear or concern of the irreparable harm that removal would cause and which he apparently desperately seeks to avoid.

In short, the only imminent and foreseeable harm here is the assessment of monetary fines, which is not enough to justify extraordinary injunctive relief. Any potential injury beyond that is purely speculative and would be based on conjecture that contradicts the record before the Court. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm."). Because O'Connell has failed to show that he is likely to suffer imminent irreparable harm in the absence of an injunction, his motion for injunctive relief is denied without the need to address the remaining elements of the

preliminary injunction standard.[4] *See Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (declining to address remaining elements for a preliminary injunction where plaintiffs failed to demonstrate irreparable harm).

## CONCLUSION

For the reasons set forth herein, O'Connell's Motion for Preliminary Injunction, Dkt. Nos. 30-31, is DENIED.

IT IS SO ORDERED.

DATED: August 27, 2026 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge



[4]Although addressing the remaining *Winter* factors is unnecessary, the Court doubts that O'Connell can show a sufficient likelihood of success on the merits either. O'Connell, for instance, claims that the Amendment cannot be enforced due to procedural misconduct, namely that a Board member with an upper-level lot was permitted to attend the HOA meeting adopting the Amendment for purposes of establishing a quorum and the Board failed to disclose this supposed conflict of interest to the lot-owners. Dkt. No. 31 at 13–15. O'Connell provides no authority to support the notion that the mere presence of an allegedly conflicted member of the Board—who recused herself from the actual voting—would somehow invalidate the results of that vote. The same is true for his claim that the ballots must have notified lot-owners that a member of the Board owned an upper-level lot, which would not have likely been a surprise to the voting residents of this small, 24-lot community. These unpersuasive arguments provide little ground to find any likelihood of success on the merits.